QUESTION PRESENTED AND CONCLUSION
Question: Does S.B. 03-24 prevent the Regents from enforcing a weapons control policy that prohibits most firearms on University property?
Conclusion: No. Colorado's constitution and statutes authorize the Regents to govern the University's internal affairs. The Regents formally adopted a specific policy banning most weapons on campus, including concealed weapons, nearly ten years ago. Any statute enacted by the General Assembly to narrow this authority must expressly limit the power of the Regents. S.B. 03-24 is not such an express statutory command.
 DISCUSSION
Colorado's new concealed weapons law, S.B. 03-24, is written to remedy inconsistencies among local jurisdictions regarding permits to carry concealed weapons. § 18-12-201(1) (c — d), C.R.S. The concealed weapons law declares the permitting and carrying of concealed handguns a matter of statewide concern and provides uniform standards for issuing permits to carry concealed handguns for self-defense. Section 18-12-201, C.R.S. S.B. 03-024 became effective on May 18, 2003.
Most significantly, the concealed weapons law allows a holder of a valid permit to carry a concealed weapon in any local jurisdiction of the State, and preempts local laws to the contrary. It provides:
 A permit to carry a concealed handgun authorizes the permittee to carry a concealed handgun in all areas of the state, except as specifically limited in this section . . . . A local government does not have authority to adopt or enforce an ordinance or resolution that would conflict with any provision of this Part 2.
Section 18-12-214, C.R.S.
Permittees who can carry concealed handguns under S.B. 03-24 are not allowed to carry these weapons in particular areas. These areas include the places where carrying concealed weapons is prohibited by federal law, on K — 12 school grounds, and in public buildings where security personnel screen each person for weapons. § 18-12-214(2) — (4), C.R.S. Also, the concealed weapons law does not restrict the rights of private property owners, tenants, employers or businesses to control the carrying of concealed handguns onto their premises. Section 18-12- 214(5), C.R.S. Notably, the concealed weapons law does not specifically address University property in these exceptions.
S.B. 03-24 amends Colorado's criminal statutes regarding unlawful carrying of a weapon on school, college or university grounds and conforms them to the new requirements of the concealed weapons law. Previously, it was a felony to carry a deadly weapon onto the grounds of any public or private college or university unless the carrier held a permit pursuant to section 18-12-105.1, C.R.S. (the precursor to the present concealed weapons law). S.B. 03-24 amends this law entirely to prohibit carrying concealed weapons on the grounds of certain public schools. Section 18-12-105.5(d), (d.5), C.R.S. Nevertheless, S.B. 03-24 does not change the criminal statutes governing carrying concealed weapons onto the grounds of a college or university, and therefore a permit holder can still carry such a weapon on campus under the amended criminal provision.
The Regents' weapons control policy. The Regents enacted a weapons control policy several years ago. The policy is based upon a finding that "the possession of firearms, explosives, and other dangerous or illegal weapons on or within any University of Colorado campus . . . interferes with the learning and working environment [and] is inconsistent with the academic mission of the University and, in fact, seriously undermines it." Regent Policies, Section 14. I. The Regents concluded that the presence of most weapons on campus threaten "the tranquility of the educational environment in an intimidating way and . . . [contribute] in an offensive manner to an unacceptable climate of violence." Id.
To address these concerns, the Regents banned most weapons on campus. They declared that the "possession of the firearms, explosives, or other dangerous or illegal weapons on or within any University of Colorado campus, leased building, other area under the jurisdiction of the local campus police department or areas where such possession interferes with the learning and working environment and is prohibited." Id. This policy to prohibit concealed weapons on campus was adopted in 1994 and has been in effect for more than nine years.
The Regents' weapons control policy is not absolute. Possession of firearms is permitted for peace officers and for others with written permission of the Chief of Police of the campus police, or from the Chancellor of a campus after consultation with the Chief of Police. Firearm storage may be provided by campus police as a service to students or employees residing in campus housing. Id.
This policy applies "within any University of Colorado campus." Id. It was adopted pursuant to the Regents' authority to "enact laws for the government of the university," § 23-20- 112, C.R.S. (2002), and to promulgate rules and regulations for the safety and welfare of students, employees, and property. . . ." § 23-5-106(1), C.R.S. (2002). As such, the Policy was intended by the Regents to have the force and effect of law. See Subryan v. Regents, 698 P.2d 1383, 1384 (Colo.App. 1984) (laws enacted by the Regents treated as statutes for purposes of interpretation).
The Legal Authority of the Regents to Regulate Campus Conduct. The Colorado Constitution grants to the Regents substantial authority to govern the internal affairs of the University. It says:
 The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law.
Colo. Const. Art. VIII § 5 (emphasis added). Colorado's statutes confirm this authority. Section 23-20-111, C.R.S. (2002) confers upon the Regents "general supervision of the university and control and direction of all funds of and appropriations to the university. . ." A separate provision, section 23-20-112, C.R.S. (2002), declares that "[t]he board of regents shall enact laws for the government of the university. . ." Finally, the Regents, as well as other governing boards of state institutions of higher education, are delegated the authority to "promulgate rules and regulations for the safety and welfare of students, employees, and property . . ." § 23-5- 106(1), C.R.S. (2002).
In a line of cases more than twenty-five years old, the Colorado Supreme Court has concluded that the legal authority granted to the Regents can be overridden by the General Assembly only through legislation that is expressly aimed at doing so. The first case in this line is Associated Students of University of Colorado v. Regents of University of Colorado, 543 P.2d 59 (Colo. 1975), in which the Court considered whether Colorado's Open Meetings Law applied to the Regents.
At the time, the Open Meetings Law applied by its terms to "meetings of two or more members of any board, committee, commission, or other policy-making or rule-making body of any state agency or authority. . ." § 24-6-402, C.R.S. (1973). The Court held that:
 [The authorities for the Regents] are special provisions, conferring upon the Regents specific and particular powers. As the trial court correctly concluded, the Sunshine Act is a general law. General legislation does not repeal conflicting special statutory or constitutional provisions unless the intent to do so is clear and unmistakable.
543 P.2d at 61.
In this way, the Supreme Court also clarified the meaning of the restriction ". . . unless otherwise provided by law" set forth at the end of Art. VIII § 5(2) of the Colorado Constitution, the principal legal authority for the Regents. The Court concluded:
 This phrase operates so that any qualification of the constitutional grant is to be construed as divesting the supervision and control granted only when a legislative enactment expressly so provides. Implied repeals are thereby intended to be guarded against. [Citation omitted]. This phrase refers to the provisions of particular and special applicable laws.
Id. at p. 61 (emphasis added).
Thus, the Supreme Court held that the Open Meetings Law did not repeal the specially granted authority of the Regents to govern the University:
 The court's interpretation of the applicability of the Sunshine Act if upheld would invalidate a law which the Regents are duly authorized to enact; and clearly this does, indeed, both limit and infringe upon the Regents' authority to govern the university. In order to reach such a result, the Sunshine Act would have to repeal both Art. VIII, Sec. 5(2) and section 124-2-11. As we noted above, such a repeal would have to be express; and the concealed weapons law contains no such language.
Id. at p. 62.
The Colorado Supreme Court reaffirmed the requirement for an express law to override the authority of the Regents in a second case, Uberoi v. University of Colorado, 686 P.2d 785 (Colo. 1984). In this case, a litigant contended that the Colorado Open Records Act applied to the University of Colorado. This statute at the time applied by its terms to "all writings made, maintained, or kept by the state or any agency, institution, or political subdivision thereof." Section 24-72-202(6), C.R.S. (1982). The Court held that this statute did not embody a legislative intent to apply to the University of Colorado, since it nowhere expressly referred to the University or to governing bodies of educational institutions. The Court again held that "the specific supervisory control over the university granted to the regents can be divested only by a legislative enactment expressly so providing." Uberoi, 686 P.2d at 788.
The outer boundary to the Regents' authority under a statute enacted by the General Assembly was established in a third case, Colorado Civil Rights Comm'n ex rel. Ramos v. Regents of the University of Colorado,759 P.2d 726 (Colo. 1988). In this matter, the Colorado Supreme Court addressed whether the Colorado Civil Rights Commission had jurisdiction over the Regents to regulate discriminatory employment practices prohibited by state law.
The Ramos decision focuses upon the breadth of the General Assembly's definition of "employer" for purposes of the Commission's jurisdiction. That definition includes not only the State of Colorado, its political subdivisions, commissions, departments, institutions, and school districts, but also "every other person employing persons within the state." Section 24-34- 401(3), C.R.S. (1982). The Court reads that definition in conjunction with the definition of "person" in the Commission statute, which includes "corporations, . . . or the State of Colorado, and all political subdivisions and agencies thereof." Section24-34-301(5), C.R.S. (1982). The Court holds that these definitions are sufficiently broad to provide express instruction, and concludes that this statutory language subjects the Regents, as an "employer," to the jurisdiction of the Commission. Id. at p. 731.
The Court specifically notes that the definition of an employer for the jurisdiction of the Commission is more broad than the language construed in Associated Students and in Uberoi. Id. at 734. The Court also finds it significant that, unlike in the case of the Open Records Act, the Commission's jurisdiction is not qualified by reference to other laws. Id. at p. 733-734. Finally the Court notes that its holdings in Associated Students and Uberoi prompted the General Assembly to amend both the Open Meetings and Open Records Acts specifically to include the Regents.
Analysis. I conclude that the statutory language in S.B. 03-24, the concealed weapons law, more closely resembles the general language evaluated in Uberoi and Associated Students than the comprehensive, all-encompassing statutory scheme addressed in Ramos. For this reason, I conclude that the Regents' weapons control policy is not preempted by S.B. 03-24.
For example, the preemption portion of the concealed weapons law specifically addresses only "local governments," and not universities. § 18-12-214(1)(a) ("A local government does not have authority to adopt or enforce an ordinance or resolution that would conflict with any provision of this part 2."). Similarly, the operative language of the concealed weapons law, that a permittee may carry a concealed weapon "in all areas of the state, except as specifically limited in this section," is a general law, and not a specific command to universities. Indeed, the concealed weapons law does not define the term "state" at all. Moreover, the language in the statute that the state occupies "the field of regulation of the bearing of concealed handguns," § 18-12-201(1)(e), C.R.S., does not specifically address commands by the Regents in the manner suggested by Associated Students and Uberoi.
Finally, the General Assembly considers judicial decisions when adopting language in subsequent legislation. Thompson v. People,181 Colo. 194, 510 P.2d 311 (1973). Indeed, subsequent to the Associated Students and Uberoi decisions the General Assembly specifically amended the language of the Open Meetings and Open Records Acts to include the Regents. § 24-6-402(1)(d), C.R.S. (2002) ("State public body" includes the "governing board of a state institution of higher education including the regents of the university of Colorado"); § 24-72- 202(1.5), C.R.S. (2002) ("Institution" includes "every state institution of higher education" including "the university of Colorado" and "the regents thereof"). For this reason, it is particularly noteworthy that the General Assembly chose not to include mention of the Regents expressly in S.B. 03-24.
 CONCLUSION
S.B. 03-24 is not an express statutory command that overrides the weapons control policy enacted by the Regents. The Regents' policy may be lawfully enforced.
Issued this 17th day of June, 2003.